[No. 4400.   Decided February 18, 1903.]

THE STATE OF WASHINGTON, *Respondent*, v. W. A. LEWIS, *Appellant*.

JURORS — COMPETENCY — WAIVER OF OBJECTIONS.

Under Bal. Code, § 4736, which provides that the verdict of a jury shall not be affected by reason of the incompetency of a juror, unless the juror was challenged for specific cause before verdict, a ground of objection to a juror will be deemed waived when the specific point was not urged as the basis of a challenge.

SAME — JUSTICE OF PEACE AS JUROR — GROUND OF CHALLENGE.

The provision of Bal. Code, § 4736, that judicial officers shall not be compelled to serve as jurors is merely a privilege granted such officers, and is not a ground of challenge for cause.

SAME.

The fact that the prosecuting attorney is the legal adviser of justices of the peace, and that a juror may have had cases before him as justice in which the prosecuting attorney was engaged for the state, would be too remote to disqualify a justice of the peace from sitting as a juror in a criminal case, when no special personal relations are shown to exist between the juror and the prosecuting attorney.

EMBEZZLEMENT — CLAIM OF LIEN FOR ATTORNEY'S FEES — GOOD FAITH — QUESTION FOR JURY.

In a prosecution of an attorney for the embezzlement of funds belonging to a client, the court is warranted in submitting the cause to the jury, although there may be a civil action pending between the attorney and his client involving the right to such funds under a claim of lien, when there is evidence tending to show that the claim of lien was not asserted in good faith.

SAME — EVIDENCE.

Under an information charging the embezzlement of a specific sum of money, proof of the receipt and conversion of a part of the fund is sufficient to sustain a conviction.

CRIMINAL LAW — INFORMATION — BILL OF PARTICULARS.

The denial of a bill of particulars upon a prosecution for larceny by embezzlement was not error, when the information showed that the defendant received certain property as an agent for another, which he fraudulently converted to his own use, and set forth a description of the specific property converted, with the time and manner of its receipt.

SAME — PROSECUTION FOR EMBEZZLEMENT — ELECTION BETWEEN CHARGES.

In a prosecution for embezzlement, a motion requiring the state to elect whether it relied upon the fiduciary relation of attorney and client, or of principal and agent was fully met by the state's announcement that it elected to rely upon the fiduciary relation of principal and agent, and not that of attorney and client.

SAME — PLEA OF FORMER ACQUITTAL — REPLY UNNECESSARY.

A plea of former acquittal does not stand admitted by reason of a failure to reply thereto, in the absence of a statute requiring the denial of such a plea.

SAME — ALLEGATIONS OF PLEA.

*Semble*, that under Bal. Code, § 6900, requiring a plea of former acquittal to state the date of judgment, the absence of such allegation would render the plea bad.

SAME — INSTRUCTIONS.

In a prosecution for embezzlement in which the state relied upon the relation of agency instead of that of attorney and client, the use of the descriptive word "attorney" in the court's charge, in referring to the defendant, would not constitute error, where the gist of the instruction dealt with the relation of agency.

SAME — MEET WITNESS FACE TO FACE — WAIVER.

A defendant's constitutional right to have the witnesses against him produced in court may be waived; and an agreement by a defendant, in order to avoid a continuance, that one of the state's absent witnesses would testify to certain facts would constitute such waiver.

SAME — EVIDENCE — ADMISSIBILITY OF ACCOUNT BOOKS.

In the prosecution of an attorney for the embezzlement of his client's money, the office books of defendant's firm, containing accounts with their general clientage, including the prosecuting witness, were properly excluded, where they contained self-serving entries made without the knowledge of the prosecuting witness.

Appeal from Superior Court, Spokane County.—Hon. FRANK H. RUDKIN, Judge. Affirmed.

*T. C. Griffitts* and *W. S. Lewis.* for appellant.

*Horace Kimball,* Prosecuting Attorney, and *Miles Poindexter,* for the State.

The opinion of the court was delivered by

HADLEY, J.—Appellant was, by information, charged with the crime of larceny. The substance of the charge is that on the 12th day of June, 1900, the appellant was the agent and attorney of one Mary Lambert, and was, by virtue of being such agent and attorney, intrusted by the clerk of the superior court of Spokane county with the sum of $225 of bank notes, money and currency of the United States, of the value of $225, the same being the property of said Mary Lambert; that by virtue of being such agent and attorney, appellant had authority to receive said money and did so receive it in the name and on account of the said Mary Lambert, and that he thereafter unlawfully converted the same to his own use. Appellant entered the pleas of not guilty and of former acquittal. A trial was had before a jury, resulting in a verdict of guilty. Motions for new trial and in arrest of judgment were denied, and judgment was entered upon the verdict of the jury, whereby appellant was sentenced to serve a term of eight years and six months' imprisonment in the state penitentiary. From said judgment this appeal is prosecuted.

It is assigned as error that the court denied appellant's challenge to the juror Salisbury on the ground that he was at the time a judicial officer of the state of Washington, namely, a justice of the peace. The examination shows that the juror is by occupation a farmer, but that he was then filling the office of justice of the peace in his precinct. Appellant had passed him for cause, and after examining another, the point was urged against Mr. Salis-

bury that as a justice of the peace he was subject to the occasional advice of the prosecuting attorney. It was not urged at the time that the mere fact that he was a justice of the peace would disqualify him, but it was suggested that it was a privilege which he could claim. It is now urged here that, under § 4736, Bal. Code, the juror was actually disqualified on the ground that he was a judicial officer. Even if appellant's contention as to the force of the statute should prevail, still, since the specific point was not urged below, we think it was waived, and the section cited expressly provides that the verdict of the jury shall not be affected unless the juror was challenged for the specific cause before the finding of the verdict. But, in any event, even if the point had been timely raised by specific challenge, we think the statute will not bear the construction urged by appellant. The statute plainly makes it a mere privilege of the persons therein specified to claim exemption from jury service. The essential provision is that they "shall not be compelled to serve as jurors." The mere fact that the section directs county commissioners to omit the names of such persons from jury lists prepared by them does not work an actual disqualification of the persons coming within the classifications named, if they have happened to be included in the list, and do not claim the privilege of exemption. The further ground of challenge, that the prosecuting attorney is the legal adviser of county officers, including justices of the peace, and that the juror may also have had cases before him as justice of the peace in which the prosecuting attorney happened to be engaged for the state, is too remote in itself to disqualify the juror. Unless the examination disclosed such special and peculiar personal relations as would seem to make it imprudent for him to act, it should not be held as ground of challenge for cause. No such

relations are shown in this record, and we think the challenge for cause was in all particulars properly denied.

It is assigned that the court erred in denying appellant's motion to require the state to furnish a bill of particulars, and also to elect whether it relied upon the fiduciary relation of attorney and client, or that of principal and agent, since it was alleged in the information that appellant was both the attorney and agent of the said Mary Lambert. The motion for bill of particulars was denied, and, in response to appellant's motion, the state announced that it elected to rely upon the fiduciary relation of principal and agent, and not that of attorney and client. We think the election which was made by the state fully met the requirements of appellant's motion to require an election. And as to the motion for a bill of particulars, we think the information sufficiently advised appellant of the material facts, within the holding of this court in *State v. Turner,* 10 Wash. 94 (38 Pac. 864). The essential elements of the information, as summarized in the above case, are that the accused shall be shown to be a person or an agent, and if an agent, he shall have received the property of his principal by virtue of the agency, and that he fraudulently and feloniously converted it to his own use. All this appears in the information in the case at bar. The specific property received and converted is described and the time and manner of its receipt are also described. It does not appear that more specific information could have been furnished by a bill of particulars, and it was, therefore, not error to deny it.

It is assigned that the court erred in submitting this cause to the jury, inasmuch as it appeared from the evidence that a civil action is pending between the appellant and the prosecuting witness, involving a dispute over the appellant's right to possession of the same property, the

alleged conversion of which constitutes the basis of this
prosecution. It is contended by appellant that a deter-
mination of the legal rights of the respective parties in the
civil suit concerning the funds in controversy must be had
before the appellant can be prosecuted for the embezzle-
ment thereof. · Appellant's position is that there is no
provision in the law of criminal procedure which warrants
a plea in abatement of a criminal action because of the
pendency of a prior civil action involving the same subject
matter, and that for the above reason appellant was rele-
gated to proof of the fact under the general issue. Evi-
dence was accordingly introduced with the view of estab-
lishing the fact that a *bona fide* controversy exists in rela-
tion to these funds, which is now in process of litigation,
and which is yet undetermined. The evidence bearing
upon the point urged here by appellant shows substantially
that the prosecuting witness, Mary Lambert, some years
ago recovered a judgment in the superior court of Spo-
kane county against Carrie N. Gillette. The attorneys
who procured the judgment not having succeeded in col-
lecting the same, she employed appellant as an attorney
for an agreed fee of $10 to examine the records, and inves-
tigate the probability of collecting the debt. The $10 fee
was paid, and, after investigation, a written agreement
was entered into between Mrs. Lambert and appellant
whereby appellant undertook the enforcement of the judg-
ment for an agreed fee of one-half of all that should be
recovered thereon, she agreeing to pay the necessary costs
attending the enforcement of the judgment. In pursu-
ance of said agreement execution was issued, and real
estate was sold thereunder in satisfaction of the judg-
ment. The interest of appellant was transferred to W. S.
Lewis, then a law student in appellant's office, and later
his law partner in a firm known as "Lewis & Lewis."

The sheriff's conveyance was made to Mary Lambert and W. S. Lewis jointly. Later it was discovered that pending the enforcement of the judgment the judgment debtor had conveyed a portion of the real estate; that an attempted satisfaction of the judgment had been made, and that the purchaser had commenced the erection of valuable improvements upon a portion of the land so sold. Thereafter an action was instituted by the firm of Lewis & Lewis to set aside the purported release, to quiet title and for possession of the lot under the sheriff's deed. Appellant contends that a new agreement was then made, by which Mrs. Lambert was to pay one-half and W. S. Lewis the other half of the reasonable attorney's fees and necessary costs and disbursements of this new litigation, and that the former written agreement related only to the issuance of execution and the sale of the property under the judgment previously obtained by other attorneys as aforesaid. The prosecuting witness contends that it was understood that the written agreement comprehended all the necessary legal services to effect a final recovery under the judgment, and that the suit to quiet title was a part of that service. The evidence shows that Mrs. Lambert did pay one-half of at least a portion of the costs and disbursements, but appellant contends that she did not pay as much as was paid out for her by Lewis & Lewis by $64.15. The litigation included the costs of an appeal to this court. During this time Mrs. Lambert and one Mrs. Muerling were conducting a lodging house as co-partners. Dissension arose between the partners, and Mrs. Muerling commenced an action to dissolve the partnership, and for the appointment of a receiver of the firm business and property. The firm of Lewis & Lewis were employed by Mrs. Lambert to defend that action. During the progress of that litigation, on stipulation of the parties, the part-

nership property was sold for $950, and the proceeds
deposited in the office of the clerk of the superior court to
await final adjudication of the case. On such final adjudi-
cation Mrs. Lambert was awarded $325 of this fund. It
was agreed by successive stipulations between the respec-
tive counsel in the case that these funds should be with-
drawn from the clerk's office. Appellant drew $100 of
Mrs. Lambert's share on October 16, 1899, and on June
12, 1900, he drew the remaining $225. The charge in this
case is based upon the alleged embezzlement of the last-
named amount. It is appellant's contention that his law
firm had a claim of lien upon said fund for services as
attorneys in the case of Muerling v. Lambert above men-
tioned, and also for services rendered and for money
expended in the litigation to quiet title heretofore men-
tioned; that prior to the institution of this prosecution
a suit was begun to establish and enforce such lien, and
that pending the determination of that controversy this
criminal prosecution cannot be waged. It was the view
of the trial court that, while appellant is entitled to a lien
upon the funds in his hands for attorney's fees for services
rendered, yet it was for the jury in this case to determine
under the evidence whether the appellant had fraudulently
converted to his own use funds which he did not in good
faith claim as attorney's fees. Upon that subject the court
instructed the jury as follows:

"If the defendant W. A. Lewis in good faith claimed
a lien upon the moneys of Mary Lambert in his hands for
a general balance due him, or the firm of which he was a
member, as attorneys' fees for services performed by
the said W. A. Lewis or the firm of which he was a mem-
ber for the said Mary Lambert, the mere fact that the
defendant retained the whole of said money in his pos-
session and failed or refused to turn the same over to the
said Mary Lambert until the amount of said claim for

attorneys' fees should be adjusted and paid would not of itself constitute an offense under the law, but you must further find from the testimony that the defendant fraudulently converted to his own use moneys belonging to the prosecuting witness Mary Lambert, which he did not in good faith claim as attorneys' fees."

A claim of lien, not made in good faith, cannot be a good defense. A claim of lien confers no right to convert the funds to one's own use, but merely a right to hold them until the claim is settled; and it would be possible for one to assert a claim of lien not in good faith, in order that he might retain possession of the funds, and thus avoid any immediate disclosure of an actual conversion thereof. It is undisputed that appellant withdrew the the last of these funds from the clerk's office on the 12th day of June, 1900. The complaint in the action to enforce the alleged lien was verified May 28, 1901, nearly one year after the balance of the funds came into appellant's possession. The testimony of the prosecuting witness is that she did not know of the withdrawal of the money by appellant at the time, and that appellant repeatedly told her the money must remain in the clerk's office until the determination of her motion for new trial, and pending her appeal if she should appeal to this court; that she learned that Mrs. Muerling had received her money, and, upon asking appellant why she could not also receive hers, he replied that, if Mrs. Muerling had withdrawn her money, she must have given a bond, but that Mrs. Lambert could not withdraw hers without dropping all further proceedings in the case; that similar statements were repeated, and that in January, 1901, she told appellant she would go to the clerk's office and inquire about getting the money herself; that thereupon appellant replied, "If you dare to do that, Mrs. Lambert, I will fine you for contempt of

court"; that forthwith, after said conversation, she went to the clerk's office herself, and then discovered that appellant had long been in possession of all her funds, the last having been withdrawn more than six months prior to that time. Some months after that, the suit to enforce the alleged lien was begun. Appellant, it is true, testified that Mrs. Lambert was advised of the withdrawal of the money. Mrs. Lambert testifies that she had paid appellant and his law firm in full for all services in the Muerling case under an express agreement as to the amount when the last payment was made, and that she owed nothing for services in the Gillette litigation, because of the written agreement whereby appellant was to perform the necessary attorney's services for one-half of what should be recovered upon the judgment. Under all these circumstances we think it became as properly the province of the jury in this case to determine whether the claim of lien was asserted in good faith, as if no civil suit concerning the same had been instituted. The evidence upon the subject was all before the jury, and the question of good faith was squarely submitted to them. In *State v. Maines,* 26 Wash. 160 (66 Pac. 431) an agent was to receive as commissions a certain percentage on the amount of sales made. This court held that all the money belonged to the principal until there was an accounting, and by consent of the principal the agent was permitted to retain a given amount. It was urged in that case that, because of his right to commissions, the agent became a joint owner with his principal of the funds in his hands, and that embezzlement could not be predicated upon a holding of joint funds. We held against the contention that it was a joint ownership, and followed what we recognized as strong authorities, which are cited in the opinion. There was no dispute as to the agent's right to commissions, but his failure to account to

his principal at the time required by his contract with him was submitted to the jury as a fact from which they were to determine the question of good faith, and whether there was an actual conversion or not. In the case at bar there is no claim of joint ownership. The funds are conceded to belong to the prosecuting witness, but appellant claims a right of lien against them. In the *Maines Case* the agent's right to a portion of the funds on an accounting was not disputed, and yet the jury found that the funds were not retained in good faith and that there was a conversion. In this case appellant's right to any portion of the funds upon an accounting is disputed, and we think the question of conversion, under the evidence, was as properly for the jury as it was in the *Maines Case*. While appellant asserted a right of lien, yet it was for the jury to say whether it was asserted in good faith or not. It may be remarked here that at the time of the commencement of the civil action to enforce a lien appellant deposited in court the sum of $125 as the sum which he claimed was due to Mrs. Lambert in excess of all claims for lien. He had received in all $325, and claimed a lien for $200. Thus the $125 which he admits was due to Mrs. Lambert he held for about one year after it came into his possession. This circumstance, taken together with the testimony on behalf of the state that no sum whatever was due him as attorney's fees, we think left it peculiarly for the jury to determine whether there was an actual conversion of the funds by appellant at the time alleged in the information, towit, June 12, 1900.

Error is assigned upon the ground that the state did not traverse appellant's plea of former acquittal, and it is urged that the plea therefore stands confessed. It has been held that, when the plea of former acquittal is not bad upon its face, it can be avoided only by replication. *State v.*

*Clenny*, 1 Head (Tenn.) 271; *Murphy v. State*, 25 Neb. 807 (41 N. W. 792). Again, it is held that a replication is implied. *State v. Swepson*, 81 N. C. 571; *Vowells v. Commonwealth*, 83 Ky. 193. In *State v. Howe*, 27 Ore. 138 (44 Pac. 672), it was held that when there is no statute requiring a reply to a plea of former acquittal, no reply is required. We think the above rule the correct one in this state, since our criminal procedure is governed by statute. Provision is made by statute for the plea of former acquittal, but no provision is made for a reply thereto. The state contends that the plea in the case at bar is, upon its face, insufficient, for the reason that it does not specify any date of the judgment under which former acquittal is claimed. Section 6900, Bal. Code, seems to make it a requirement of such a plea that it shall state such a date, and it has been held in California that under a statute requiring a statement of the time of the former judgment in a plea of former acquittal the absence of the statutory requirements rendered the plea bad, and that it was not necessary for the jury to find on that subject. *People v. O'Leary*, 77 Cal. 30 (18 Pac. 856).

The only record evidence upon this subject shows a mere dismissal by the prosecuting attorney of another charge against appellant, which appellant claims was for the same offense covered by the information in the case at bar. The state insists that the offense charged in the first information is not the same as that charged here. But, even conceding that it may be the same, the order of dismissal was not a bar to another prosecution for the same offense, since the offense charged is a felony. Section 6916, Bal. Code. Even if the pleadings had properly presented the issue of former acquittal, there was, as we have seen, no competent evidence to support it, and therefore nothing to submit to the jury upon that subject.

Error is assigned that the court, in effect, instructed the jury that evidence of the receipt and conversion of a part of the fund described in the information will satisfy the requirements of the information. It is urged that, since the charge describes an integral sum, viz,. "the sum of two hundred and twenty-five dollars of bank notes, money, and currency of the United States," the proof must strictly show the conversion of that sum.

"The prosecution is not held to strict proof as to the number, quantity, or value of the articles, whether the indictment charges the embezzlement of money or of other property." 7 Enc. Pl. & Pr., 454.

The cases cited in support of the above text hold that proof of either a smaller or larger amount than that specified in the charge will sustain a conviction. The court. therefore, did not err in the particular named.

It is assigned that the court erred in its instruction wherein the word "attorney" was used in describing appellant, it being contended that the state had elected to rely upon the relation of agency, and not upon that of attorney and client. While the word may have been used as descriptive of appellant, yet the gist of the instruction was that, if they found that W. A. Lewis received the money, and was intrusted therewith on account of Mrs. Lambert, he thereby became the agent of the owner. W. A. Lewis was a person, and, as such, if he was intrusted with money on account of the prosecuting witness, he thereby became her agent. There was no material error in the instruction.

Error in the court's instructions on the subject of attorney's liens is assigned. The instructions come within the views of the court heretofore expressed in the discussion of the subject of good faith in the assertion of the lien. We will, therefore, not pursue that discussion further. Further error is alleged upon the refusal of the court to

give certain requested instructions upon that branch of the case, but we think the law of the subject was covered by the instructions given, and that no error was committed in the refusal to give those requested.

It is urged as error that the agreed testimony of James A. Drain was admitted. An affidavit for continuance on behalf of the state was presented before the beginning of the trial, showing the absence of said witness from the state, and also showing what would be his testimony if present. It was agreed by the defendant that, subject to objections for immateriality and incompetency, the affidavit might be considered as testimony actually given by the witness at the trial. The testimony was material, since it related to the payment of the money by the witness, as clerk, to appellant. We therefore think it was not error to admit it. A defendant may waive his constitutional right to have the witnesses produced against him. Wharton, Criminal Pleading & Practice (9th ed.), § 595; *State v. Wagner,* 78 Mo. 644 (47 Am. Rep. 131); *Hancock v. State,* 14 Tex. App. 392. Appellant waived that right in this case by his ante-trial agreement. The testimony as to the fact of payment by the witness to appellant is not, however, disputed. The only additional element in the testimony is that he paid appellant "bank notes, money, and currency of the United States," and the time of the payment is also stated. Thus the testimony described the property, was all material under the issues, and was properly admitted under the appellant's waiver.

It is urged as error that the court refused admission in evidence of some large, leather-bound books or journals which appear to have been the office books of the appellant and his firm, containing accounts with their general clientage. Portions of the books were also specially offered, containing accounts with Mrs. Lambert. We think these

were all properly excluded. They contained merely the entries of appellant and his law firm, made without knowledge of the prosecuting witness, and amounted to no more than unsworn statements, which were objectionable on the ground of being self-serving in their nature.

Error upon the personal conduct of both the court and the prosecuting attorney during the progress of the trial is assigned; but we do not find in the record anything of that nature which we believe amounted to reversible error, or which calls for our criticism here.

The principal errors have been discussed. Many questions involved in other errors assigned have been more or less discussed in this opinion, and we do not believe any good purpose will be served by a further discussion of the matters urged.

It is insisted that an excessive sentence was imposed by the trial court, and that it erred in that behalf. The sentence is, however, for a period within the limitation of the statute, and we shall not disturb the judgment on that ground from anything that appears in the record.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, DUNBAR and ANDERS, JJ., concur.