## STATE v. GLOVER.

Rev. Cr. Code Proc. § 339, provides for the challenge of jurors for implied bias in case the juror stands in the relation of attorney and client to the person alleged to be injured by the offense .charged, or on whose complaint the prosecution was instituted or is in his employment. **Held,** that the right to a challenge for implied bias depends exclusively on the relationship of the juror to the defendant, the prosecuting witness, or the person injured by the offense charged, so that the relation of attorney and client between the juror and the state's attorney was not ground for the challenge.

Where, in a prosecution for horse stealing, it was claimed that defendant disposed of the horses to N., by whom they were shipped to Nebraska, where they were taken by the sheriff, the latter was properly permitted to testify that during a former trial he heard defendant state in the courtroom that he went from his ranch to P. at the same time N. went, which was the day he called at the ranch of H., who testified that he saw some loose horses being driven outside his fence and in the direction of the village.

Where, in a prosecution for horse stealing the state claimed that defendant had sent certain of the horses to Nebraska by N. for sale, a question, asked of a sheriff who seized the horses from N. in Nebraska, as to whether defendant said anything about having sent any horses to Nebraska by N., related to the horses which were the subject of the larceny, and was not objectionable as irrelevant.

In a prosecution for horse stealing, circumstantial evidence **held** sufficient to sustain a conviction.

(Opinion filed, October 30, 1907.)

Error to Circuit Court, Meade County. Hon W. G. Rice, Judge.

Rome Glover was convicted of horse stealing, and he brings error. Affirmed.

*Harry P. Atwater* and *M. McMahon,* for plaintiff in error. *S. W. Clark, Atty. Gen.,* and *John B. Milek, State's Atty.,* for the State.

FULLER, P. J. The first point urged as ground for reversing the conviction of plaintiff in error, charged with larceny of two horses, is the denial of his challenge taken to an individual juror for the reason that between him and the State's attorney conducting the prosecution the relation of attorney and client existed at the time of trial. So far as pertinent to the question thus presented, the Legislature of 1903 specified the only causes for challenging jurors on account of implied bias as follows: "(1) Consanguinity or affinity within the sixth degree, inclusive, to the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or to the defendant. (2) Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or in his employment on wages." Section 339, Rev. Code Cr. Proc. (Laws 1903, p. 198, c. 172). The plain terms of this statute make it certain that the right to challenge a juror for implied bias depends exclusively upon the relationship he bears to the defendant, or the prosecuting witness, or the person alleged to be injured by the offense charged in the information or indictment. Whether this relation be family membership, guardian and ward, attorney and client, master and servant, landlord and tenant, or consanquinity or affinity within the prohibited degree, it must exist between the defendant, prosecuting witness, or party injured by the alleged crime and the proposed juror, or he is not disqualified, and the statute violates no provision of the Constitution. In the absence of a statute making the relationship of attorney and client between a juror and state's attorney a ground for challenge, there is no error in the ruling of the trial court. Construing like provisions governing the selection of individual jurors, the courts have uniformly so held. State v. Carter, 121 Iowa, 135, 96 N.

W. 710; McCorkle v. Mallory, 30 Wash. 632, 71 Pac. 186. In a recent decision, blood or marriage relationship between a juror and the state's attorney engaged in the prosecution was not considered disqualifying without a statute making it a ground for challenge. People v. Waller, 70 Mich. 237, 38 N. W. 261.

The verdict of guilty as charged in the information rests mainly on circumstantial evidence, which, in the order of time may be summarized as follows: On the night of July 5, 1903, while moving a drove of cattle across the western part of this state, the prosecuting witness lost the horses in question, and soon afterward a witness sworn at the trial noticed that they were ranging on White Wood creek near his father's ranch apparently backward and forward across the line between Butte and Meade counties, where they remained the greater part of the time on a single school section and were frequently seen by numerous persons until the middle of May, 1905, when they disappeared and never returned to that part of the country. Some time during the next month, plaintiff in error, who resided in the vicinity of where these horses had ranged for nearly two years, stated to a neighbor at whose house he called that he was on his way to the village of Pedro, and at identically the same time some one was driving a number of loose horses in that direction just outside a near-by fence inclosing the premises. During the spring of 1905, Robert L. Nickerson was in the employ of the accused as a laborer on his horse ranch in Meade county, and in June of that year he was seen in Stanley county just east of Meade county traveling eastward with three or four head of horses. Later in the season Herbert Cottrell, a Nebraska sheriff, took the horses belonging to the prosecuting witness from the possession of Nickerson at the village of Bell Grade in that state, and in January following shipped one of them to the sheriff of Meade county; the other horse having died in the meantime. Jesse Brown, the sheriff of Meade county to whom the horse taken from Nickerson was shipped from Nebraska, was very properly permitted to testify that during a former trial of the case he heard the accused make the statement in the courtroom that he went from his ranch on Beaver Dam to Pedro at the same time Robert L. Nickerson went, and this was the day that he called at Howell's ranch, and

at the time Mr. Howell testifies that he saw some loose horses being driven outside his fence and in the direction of that village. The same witness also testified that after he had seen these horses in Nebraska he had a conversation with the accused in which he described them and their brands as being "a round topped A on the left hip and an inverted figure 2 on the left hind leg, low down, right above the joint"; and to this the accused, who claimed the property, responded, in substance, that the round topped A was his brand, and that the other brand mentioned was not on them when he last saw the horses. In concluding the testimony of this witness, he was interrogated by counsel for the prosecution as follows: "Q. Did Mr. Glover say anything at that time of having sent any horse to Nebraska with Nickerson? (Objected to as immaterial and incompetent. It has no reference to the horses in controversy here. Objection overruled. Exceptions.) A. Yes, sir; a couple of bay horses. The horses he and I had the talk about." The question, though perhaps leading and suggestive of the answer, related to the horses made the subject of the larceny, and it was not erroneous to overrule the objection as offered.

Now the undisputed evidence is amply sufficient to justify the reasonable inference that the brand owned and used by the accused on his own horses was lightly placed on each of these two horses, just above the permanent brand of the prosecuting witness, and, as the hair grew longer during the succeeding fall and winter, the round topped A wholly disappeared; but there is not the slightest room for doubt concerning the identity of such horses as the property of the prosecuting witness, as alleged in the information. About the time the accused had this conversation with sheriff Brown of Meade county, and learned that the horses had been taken from Nickerson, he wrote the Nebraska sheriff in whose possession they were, and soon afterward executed and forwarded to that officer the following claim and authorization made under oath: "State of South Dakota, County of Meade—ss.: Rome Glover, of lawful age, being first duly sworn, on his oath deposes and says: That he is the owner of those two certain horses now in the possession of Sheriff Cottrell of Springview, Nebraska, taken by him from Bob Nickerson, to whom deponent had delivered said horses to sell

for deponent. Said horses bear the brand of —— low on left stifle and other brands. Both are geldings; one being a brown, and the other light bay. I also authorize said sheriff to sell the said horses and remit me the proceeds, less his commission. Rome Glover."

No exception was taken to the fair and impartial instructions of the trial court under which the jury considered the evidence stated herein, together with much other testimony offered and properly admitted in logical order as tending to prove the offense charged to the exclusion of every other reasonable hypothesis. Upon the whole case disclosed by the record, it cannot be said that the facts and circumstances are insufficient to prove the venue as laid and justifying the inference of guilt beyond a reasonable doubt and to a moral certainty.

Being satisfied from a studius examination of every point urged in favor of a reversal that no errors of law occurred in the court below, the order denying the defendant's motion for a new trial is affirmed.