679 S.E.2d 579

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Billie Dawn HATLEY, Defendant Below, Appellant.**

**No. 33919.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2009.

Decided March 13, 2009.

Concurring Opinion of Justice Ketchum March 17, 2009.

Joseph W. Wagoner, Esq., Lewis County Prosecuting Attorney, Robert M. Morris, Esq., Assistant Prosecuting Attorney, Weston, WV, for Appellee.

Thomas J. Prall, Esq., and James E. Hawkins, Esq., Buckhannon, WV, for Appellant.

## PER CURIAM.[1]

Appellant Billie Dawn Hatley appeals her conviction for first degree robbery under W. Va.Code § 61–2–12 (2000), and her sentence

---

1. Pursuant to administrative orders entered September 11, 2008 and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

of a ten-year determinate term of incarceration. Because we find that the circuit court abused its discretion in failing to strike a juror for cause, we reverse the appellant's conviction and sentence, and we remand for proceedings consistent with this opinion.[2]

## I.

### FACTS

This case arises from a purse snatching. The evidence below indicates that Nancy Ellen Bailey was walking into a Walmart store when Billie Dawn Hatley, the appellant, came up to Ms. Bailey and tugged on her purse. There is evidence to indicate that Ms. Bailey was not otherwise touched by the appellant. Ms. Bailey briefly resisted before the appellant got Ms. Bailey's purse, jumped into a vehicle, and was driven away. The appellant later admitted to a police officer that she took $40 out of the purse and then discarded the purse and its contents, which the police subsequently found.

The appellant was indicted and tried for first degree robbery under W. Va.Code § 61–2–12 (2000).[3] During *voir dire*, Prospective Juror Boyd Conrad disclosed that he had hired the prosecuting attorney, Joseph Wagoner, a couple of years earlier to prepare deeds for him, and that he would again use the services of Mr. Wagoner if the need arose. Mr. Conrad indicated, however, that he believed that he could be fair and impartial at trial. The appellant objected to Mr. Conrad remaining on the jury panel but the trial court overruled the objection. The appellant ultimately struck Mr. Conrad, and he did not serve on the jury.

At the close of the evidence, the jury returned a verdict of first-degree robbery, and the trial court sentenced the appellant to a determinate term of 10 years. The appellant now appeals.

## II.

### STANDARD OF REVIEW

■ We are called upon in this case to decide whether a prospective juror should have been excused from the jury panel for cause. "The determination of whether a prospective juror should be excused to avoid bias or prejudice in the jury panel is a matter within the sound discretion of the trial judge." *O'Dell v. Miller*, 211 W.Va. 285, 288, 565 S.E.2d 407, 410 (2002) (citations omitted). Thus, we review the trial court's ultimate decision not to strike Prospective Juror Conrad for cause under an abuse of discretion standard.

## III.

### DISCUSSION

■ The sole issue that we address in this case is whether Prospective Juror Conrad should have been disqualified from serving on the jury panel below because he had a prior attorney-client relationship with the prosecutor in the case and he professed that he would seek out the same relationship with the prosecutor in the future if the need arose.

■ A defendant in a criminal trial is entitled to an impartial jury. "The object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias." *O'Dell*, 211 W.Va. at 288, 565 S.E.2d at 410. This Court has explained that "[t]he true test as to

2. The appellant raises four assignments of error on appeal. In addition to the trial court's failure to strike a prospective juror for cause, the appellant also alleges error in failing to instruct the jury on petit larceny as a lesser included offense of robbery; failing to read to the jury the robbery statute in regard to what constitutes violence; and in sentencing the appellant to ten years which the appellant says is a constitutionally impermissible sentence under these facts. Although these assignments of error may have merit, because we reverse on the issue of failing to strike the prospective juror for cause, we find it unnecessary to address these alleged errors.

3. The pertinent part of this code section provides:

(a) Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating ... is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syllabus Point 1, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974). We have further indicated that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syllabus Point 5, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). Moreover, "as far as is practicable in the selection of jurors, trial courts should endeavor to secure those jurors who are not only free from but who are not even subject to any well-grounded suspicion of any bias or prejudice." *O'Dell,* 211 W.Va. at 289, 565 S.E.2d at 411 (citations omitted). Finally, we have held that,

> When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror.

Syllabus Point 3, *O'Dell, supra.*

This Court has had occasion to consider whether a prospective juror's current attorney-client relationship with the prosecuting attorney mandated the juror's disqualification. In *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199 (1983), the prosecuting attorney informed the court during *voir dire* that he represented prospective juror Hughes, along with 30 to 40 members of Mr. Hughes' family, in a partition suit then pending in the circuit court. While the prosecutor had dealt directly with Mr. Hughes' sister in the case, he had never met Mr. Hughes, and Mr. Hughes was not even aware that the prosecutor was involved. Defense counsel moved to excuse Mr. Hughes from the jury panel for cause because he was a client of the prosecutor, but the court denied the motion.

In discussing whether the trial court acted properly, this Court explained in *Audia:*

> We have not yet considered the situation presented here, where the prospective juror is a client of the prosecuting attorney at the time of trial. Such a relationship is not one of the grounds for disqualification set forth in our statutes, [W. Va.Code § 52–1–8 (2007) ] and 56–6–12 [1923],[4] nor is it one of our common law causes of *prima facie* grounds for disqualification from jury service. *See State v. Riley,* 151

<hr>

4. W. Va.Code § 52–1–8 provides, in part:

> (b) A prospective juror is disqualified to serve on a jury if the prospective juror:
> (1) Is not a citizen of the United States, at least eighteen years old and a resident of the county;
> (2) Is unable to read, speak and understand the English language. For the purposes of this section, the requirement of speaking and understanding the English language is met by the ability to communicate in American sign language or signed English;
> (3) Is incapable, by reason of substantial physical or mental disability, of rendering satisfactory jury service; but a person claiming this disqualification may be required to submit a physician's certificate as to the disability and the certifying physician is subject to inquiry by the court at its discretion;
> (4) Has, within the preceding two years, been summoned to serve as a petit juror, grand juror or magistrate court juror, and has actually attended sessions of the magistrate or circuit court and been reimbursed for his or her expenses as a juror pursuant to the provisions of section twenty-one [§ 52–1–21] of this article, section thirteen [§ 52–2–13], article two of this

chapter, or pursuant to an applicable rule or regulation of the Supreme Court of Appeals promulgated pursuant to the provisions of section eight [§ 50–5–8], article five, chapter fifty of this code;
> (5) Has lost the right to vote because of a criminal conviction; or
> (6) Has been convicted of perjury, false swearing or other infamous offense.

According to W. Va.Code § 56–6–12 [1923],

> Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. And in every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.

W.Va. 364, 151 S.E.2d 308, 320 (1966) [*overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.,* 210 W.Va. 498, 558 S.E.2d 298 (2001)]; *State v. Dushman,* 79 W.Va. 747, 91 S.E. 809 (1917).[5] In addition, we find no other jurisdiction which has held such a relationship to be *prima facie* grounds for disqualification of a prospective juror.[6] We find no prejudice, *per se,* in the attorney-client relationship between the prosecutor and Hughes, particularly where, as here, the representation is of a class of people and he has little, if any, contact with the particular individual who is the juror.

171 W.Va. at 574, 301 S.E.2d at 205–206. The Court went on to note that,

Hughes' responses during *voir dire* revealed no bias or prejudice on his part, and showed that he would be able to render a fair and impartial verdict solely on the evidence presented to him. We have already noted the limited contact, if any, between Hughes and the prosecutor before this trial. Perhaps, the more prudent course by the trial court would have been to excuse Hughes. We hold, however, that its failure to do so in this case was not an abuse of discretion and was not reversible error.

*Audia,* 171 W.Va. at 574, 301 S.E.2d at 206. Finally, in Syllabus Point 3 of *Audia,* we held:

Where a prospective juror is one of a class of persons represented by the prosecuting attorney at the time of trial, but there has been no actual contact between that juror and the prosecutor, the existence of the attorney-client relationship alone is not *prima facie* grounds for disqualification of that juror.

▮ Another case in which this Court considered attorney-client relationships between attorneys at trial and prospective jurors is *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002). In *O'Dell,* we determined that the trial court abused its discretion by not striking a challenged juror for cause where the juror was a former patient of the defendant doctor and was currently a client of the law firm that represented the defendant. We noted that,

While no West Virginia case squarely addresses the issue of attorney-client relationships between attorneys and prospective jurors, the Supreme Court of Virginia has reversed and remanded a personal injury lawsuit for a new trial on the ground that the trial court should have removed a prospective juror for cause who was at the time of trial a client of the law firm representing the plaintiff. *Cantrell v. Crews,* 259 Va. 47, 523 S.E.2d 502 (Va.2000). In *Cantrell v. Crews,* the Virginia Supreme Court commented that "[p]ublic confidence in the integrity of the process is at stake. It cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties[.]" *Id.,* 259 Va. at 51, 523 S.E.2d at 504.

\* \* \*

In many West Virginia communities, prospective jurors will often know the parties and their attorneys. Nevertheless, this familiarity does not remove the trial court's obligation to empanel a fair and

---

5. *Audia* quotes in a footnote *State v. Dushman,* 79 W.Va. 747, 749, 91 S.E. 809, 810 (1917), which states:

At the common law the principal causes of challenges, prima facie disqualifying jurors, were: (1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included.

6. *Audia* cites in a footnote *Harris v. State,* 46 Ala.App. 497, 243 So.2d 770 (Ala.Cr.App.1970); *People v. Wilkes,* 44 Cal.2d 679, 284 P.2d 481 (1955); *State v. Wilcoxen,* 200 Iowa 1250, 206 N.W. 260 (1925); *State v. Ekis,* 2 Kan.App.2d 658, 586 P.2d 288 (Kan.App.1978); *State v. Grant,* 394 S.W.2d 285 (Mo.1965); *State v. Radi,* 176 Mont. 451, 578 P.2d 1169 (Mont.1978); *State v. Glover,* 21 S.D. 465, 113 N.W. 625 (1907); *State v. Lewis,* 31 Wash. 75, 71 P. 778 (1903); *see also* Annot., 72 A.L.R.2d 673 (1960); *but cf. Klinck v. State,* 203 Ind. 647, 179 N.E. 549 (1932) [indicating challenge might have been sustained if attorney-client relationship had existed at time of trial.]

impartial jury as required by West Virginia's *Constitution*, Article 3, § 10. This obligation includes striking prospective jurors who have a significant past or current relationship with a party or a law firm. *O'Dell*, 211 W.Va. at 290–291, 565 S.E.2d at 412–413 (footnote omitted). It is apparent from our discussions in *Audia* and *O'Dell* that while an attorney-client relationship between a prospective juror and the prosecuting attorney does not *per se* disqualify that juror, such a relationship merits the closest scrutiny by the trial court, and the more prudent course may be to excuse the juror.

In the instant case, we find that the trial court abused its discretion in failing to strike Prospective Juror Conrad for cause. Significant to this finding is the fact that the prosecuting attorney's representation of Mr. Conrad was fairly recent, only a couple of years prior to the appellant's trial, and Mr. Conrad indicated that he would again hire the prosecuting attorney in the future in the event he needed legal work done. This Court previously has stated that the attorney-client relationship is one of trust and confidence. *See Delaware CWC Liquidation Corp. v. Martin,* 213 W.Va. 617, 622, 584 S.E.2d 473, 478 (2003) ("[a]n attorney's nondelegable duty of loyalty to his client and the level of trust a client places in his attorney are also essential elements of the attorney-client relationship" (citations omitted)); *Lawyer Disciplinary Bd. v. Ball,* 219 W.Va. 296, 309, 633 S.E.2d 241, 254 (2006) ("trust and honesty . . . are indispensable to the functioning of the attorney-client relationship," *quoting Matter of Discipline of Babilis,* 951 P.2d 207, 217 (Utah 1997)). Mr. Conrad's willingness to hire the prosecuting attorney to represent him in the future indicates that he had established a relationship of trust with the prosecuting attorney.

Because of the attorney-client relationship between the prosecuting attorney and Mr. Conrad, we believe that the trial court was obligated to strike Mr. Conrad for cause.

While this is a close case, we conclude that the fact that the prosecuting attorney had recently represented Mr. Conrad and Mr. Conrad would hire the prosecuting attorney to do legal work for him in the future raises a well-grounded suspicion of bias or prejudice. Moreover, we believe that Mr. Conrad's assertion that the prosecuting attorney's previous representation of him would not bias or prejudice him is insufficient to allay this suspicion. Mr. Conrad's recent attorney-client relationship with the prosecuting attorney and potential future relationship raised a legitimate doubt that absent more, should have in this case been resolved in favor of excusing Mr. Conrad.

■ This Court has indicated that "if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error." Syllabus Point 8, in part, *State v. Phillips,* 194 W.Va. 569, 461 S.E.2d 75 (1995). Accordingly, we find that it was reversible error for the trial court to fail to strike Mr. Conrad from the jury panel, and we remand for further proceedings consistent with this opinion.[7]

## IV.

## CONCLUSION

For the reason set forth above, we reverse the judgment of the Circuit Court of Lewis County and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

Justice KETCHUM concurs and reserves the right to file a concurring opinion.

---

7. The State contends that the prosecutor's representation of Prospective Juror Conrad occurred well in the past and involved only the drafting of a deed. Also, says the State, Prospective Juror Conrad responded unhesitatingly that he had no bias that would prevent him from acting impartially. Finally, the State asserts that the drafting of a deed does not generally entail a great deal of work on the part of the attorney or much involvement between the attorney and client. For the reasons expressed in the body of this opinion, we find no merit to the State's arguments.

KETCHUM, J., concurring.

(Filed March 17, 2009)

After a thorough review of the record in this appeal, and taking into consideration the arguments made by all parties, I concur with the ultimate result in this case.

I am writing separately to express my concern that the defendant may have been overcharged or, at a minimum, that the defendant was certainly entitled to a jury instruction on simple larceny.[1] This Court has long recognized the distinction between robbery and simple larceny. In *State v. Chambers*, 22 W.Va. 779 (1883) we had one of our first opportunities to address the issue of pocketbook grabbing and concluded at Syllabus Point 2 that

> In this State the distinction between simple larceny and *larceny from the person*, except where it is accompanied with such force and fear, as will raise the crime to robbery, does not exist, and all larceny not amounting to robbery, is simple larceny. (page reference omitted).(emphasis in original text).

Our decision in *Chambers* reflected the common law definition of robbery, a point more recently recognized by this Court in Syllabus Point 1 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981) where we held that:

> At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods.

We also said, in Syllabus Point 2 of *Harless*, that:

> At common law, robbery could be accomplished either by actual physical force or violence inflicted on the victim or by intimidating the victim by placing him in fear of bodily injury. There were no degrees or grades of common law robbery.

Our decisions in *Chambers* and *Harless* can be simply summarized to mean that "all larceny not amounting to robbery is simple larceny" and that "robbery requires proof that the defendant used violence or fear in the theft of money or goods." While there were no degrees or grades of robbery at common law, our Legislature has codified two degrees of robbery—First Degree Robbery and Second Degree Robbery. First Degree Robbery is set forth at *W.Va.Code*, § 61–2–12(a) and provides in relevant part that:

> Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree....

Second Degree Robbery is set forth at *W.Va. Code*, § 61–2–12(b) and provides in relevant part that:

> Any person who commits or attempts to commit robbery by placing the victim in fear of bodily injury by means other than those set forth in subsection (a) of this section or any person who commits or attempts to commit robbery by the use of any means designed to temporarily disable the victim, including, but not limited to, the use of a disabling chemical substance or an electronic shock device, is guilty of robbery in the second degree....

A plain reading of subsections (a) and (b) of *W.Va.Code*, § 61–2–12 shows that the Legislature has more or less codified the common law definition of robbery and graded the degrees of robbery according to the level of violence involved, with First Degree encompassing the more dangerous and violent forms of robbery (the common law equivalent of "robbery by force") and Second Degree encompassing the less dangerous forms of robbery (the common law equivalent of "robbery by fear").[2]

---

1. As we stated in Footnote 2 of the majority opinion, it was not necessary to address this issue to resolve this appeal.

2. In *Harless* we distinguished the two degrees of robbery as aggravated and non-aggravated. "...

the distinguishing feature between aggravated and nonaggravated robbery under our current robbery statute is that the former requires the utilization of physical force or the use of a deadly weapon against the victim; the latter crime re-

In this appeal, the defendant was charged with First Degree Robbery. First Degree Robbery required that the State prove beyond a reasonable doubt that the offense alleged was committed with "violence to the person" or that the offense was committed with a "threat of deadly force by the presenting of a firearm or other deadly weapon." *W.Va.Code*, § 61–2–12(a), *supra*. In the defendant's case, there was *no evidence* that any kind of "deadly weapon" was used (threatened or actual) leaving the State with the necessity to prove beyond a reasonable doubt that the defendant used "violence to the person" when taking the purse.

Having thoroughly reviewed the record, the evidence relied upon by the State to prove "violence to the person" appears tenuous and speculative and, had we chosen to decide this appeal on that issue, the evidence is likely insufficient for reasonable minds to find beyond a reasonable doubt that "violence to the person" occurred.[3]

In addition to the concerns discussed above, the record also suggests that the defendant's conviction was suspect because the circuit court's instructions to the jury were incomplete. The defendant's trial counsel repeatedly requested that the circuit court instruct the jury on the meaning of "violence to the person"—requests that the circuit court refused. During deliberations, this error was compounded when the jury asked the circuit court for a definition of the phrase "violence to the person" and the jury foreperson even requested a dictionary so the jury could look up the common definition of violence. In response to the jury's request, the circuit court told the jury to rely upon "their own common sense."

The circuit court's instruction to the jury were also incomplete in terms of the lessor included offense of larceny. The record shows that the defendant requested an instruction for the lessor included offense of larceny, but that request too was refused by the circuit court which held that the defendant "must put on evidence to show there was no force" before being entitled to a jury instruction for simple larceny. In any retrial—should the State choose again to go with robbery—the jury should be instructed on the definition of "use of violence" and the jury must be given an instruction for simple larceny should the defendant request that instruction. The State bears the burden of proof in criminal cases and the defendant need not introduce evidence of the absence of violence to the person—a required element of First Degree Robbery—before being entitled to an instruction on a lessor included offense where the evidence was as tenuous on the greater offense as that submitted by the State at the defendant's trial below.

On remand, it is my sincerest hope that the trial court, the State and the defendant will consider the concerns discussed in this opinion prior to any retrial, as well as the cases discussed in footnote 4 of this concurring opinion. For the reasons stated, I concur with the majority opinion.[4]

---

quires only that the victim be placed in fear of bodily injury." *Harless*, 168 W.Va. at 713, 285 S.E.2d at 465.

**3.** There is also virtually no evidence that the victim was placed in fear of bodily injury and, therefore, there was insufficient evidence for a conviction on Second Degree Robbery. *W.Va. Code*, § 61–2–12(b).

**4.** In terms of further guidance, the parties may want to consider the following cases as examples of how we, and other states, have addressed cases involving facts similar to those of the defendant's offense: *Winn v. Commonwealth*, 21 Va.App. 179, 462 S.E.2d 911 (1995) (evidence was insufficient to support robbery conviction of defendant who took victim's purse, as defendant did not use even slight violence or intimidation against victim to effect theft of purse and victim did not resist taking, notwithstanding testimony that defendant "took" victim's purse "very strongly" and ran with it.); *State v. Allen*, 2 So.3d 499 (La.App. 4 Cir.2008)(defendant's conviction for purse snatching reversed with directions that on retrial jury to be instructed on lessor included offense of theft); *State v. Albright*, 209 W.Va. 53, 543 S.E.2d 334 (2000)(defendant's conviction for non-aggravated robbery affirmed where evidence showed that even though defendant made no verbal or physical threats of vio-

lence, the victim was placed in fear of bodily injury when she stuck her arm into defendant's car in attempt to retrieve her purse, but withdrew it quickly in fear that "maybe [defendant] would drag me."); *People v. Davis*, 71 A.D.2d 607, 418 N.Y.S.2d 127 (A.D. 2 Dept.1979)(the Court, by Memorandum Order, modified defendant's conviction of robbery for purse snatching to a conviction of grand larceny where "testimony established that defendant 'snatched' a purse and a shopping bag from the victim" but that "[t]here was no evidence that the victim was injured or was in danger of injury."); *People v. Thomas*, 119 Ill.App.3d 464, 75 Ill.Dec. 1, 456 N.E.2d 684 (1983)(defendant's conviction of robbery for purse snatching reversed on finding that evidence did not show evidence of force or intimidation notwithstanding fact that victim had red mark on arm from force of purse being pulled from her); *People v. Hilton*, 25 A.D.3d 505, 810 N.Y.S.2d 19 (N.Y.A.D. 1 Dept.,2006)(evidence was sufficient to support conviction for robbery in the third degree where evidence showed that defendant used and threatened the immediate use of force to facilitate his theft of the victim's purse, by blocking the victim's exit, demanding money and holding a bottle in a threatening manner); *People v. Merchant*, 361 Ill.App.3d 69, 297 Ill.Dec. 89, 836 N.E.2d 820 (Ill.App. 1 Dist., 2005)(although a simple snatching or taking of property from the person is not sufficient force to constitute robbery, the act may be robbery where a struggle ensues, the victim is injured in the taking, or the property is so attached to the victim's person or clothing as to create resistance to the taking); *Owens v. State*, 787 So.2d 143 (Fla. 2d DCA 2001)(evidence did not establish the force necessary to sustain a robbery conviction based on purse-snatching incident; victim did not resist at all, nor was she held or struck, and while the snatching produced mark on victim's shoulder, mark resulted merely from force defendant employed to remove purse.); *State v. Robertson*, 138 N.C.App. 506, 531 S.E.2d 490 (2000)(defendant used neither actual nor constructive force to gain possession of victim's purse, and thus could not be convicted of robbery; only force used by defendant was that sufficient to remove victim's purse from her shoulder, defendant never attempted to overpower victim or otherwise restrain her, defendant made no threatening remarks or gestures to victim, and any alleged threat made by defendant was not made in context of defendant trying to take victim's purse.); *Jones v. Commonwealth*, 26 Va.App. 736, 496 S.E.2d 668 (1998)(to transform purse snatching from larceny to robbery, there must be additional circumstances at time of snatching; for example, these circumstances are present when struggle ensues, where victim is knocked down, or where victim is put in fear-in other words, where defendant employs violence or intimidation against victim's person.); *State v. Sein*, 124 N.J. 209, 590 A.2d 665 (1991)(the sudden snatching of a purse from its owner's grasp does not involve enough force to elevate the offense from theft from the person to robbery unless defendant uses some degree of force to "wrest" the object from the victim.); *R.P. v. State*, 478 So.2d 1106 (Fla.App. 3 Dist., 1985)(picking pocket or snatching purse is not robbery if no more force or violence is used than is necessary to remove the property from a person who does not resist.).