STATE OF WEST VIRGINIA

*v.*

FRANK LEWIS ROWE

(No. 14135)

Decided October 23, 1979.

*Larry N. Sullivan* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *David F. Greene,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

On January 13, 1976, Frank Lewis Rowe was arrested for public drunkenness and placed in the Wood County jail "drunk tank" with three other men—Ardell Braden, Richard Duffy and Floyd Malone. Between 5:30 and 6:00 p.m. the same day deputies discovered that Malone had been beaten to death. Rowe was convicted of second degree murder.

I.

Fourteen photographs of Malone's body and the cell, taken when the body was found, were admitted over objection after an *in camera* hearing. Defendant contends they were calculated to arouse the jury's passions and prejudices against him.

We have not considered specific guides to help our trial courts decide about admissibility of photographs of a victim in a criminal case when a defendant objects because the photographs are gruesome or revolting, and therefore unduly prejudicial.

Syllabus Point 6 of *State v. Sette*, ____ W. Va. ____, 242 S.E.2d 464 (1978), taken from *State v. Wooldridge*, 129 W. Va. 448, 40 S.E.2d 899 (1946) is:

> " 'While photographs may, as a general rule, be introduced in evidence to depict scenes material to some issue therein, whether a particular photograph, or groups of photographs, should be admitted in evidence, rests in the sound discretion of the trial court; and its rulings thereon will be upheld unless there is a clear showing that its discretion has been abused.' "

*Sette* upheld introduction of photographs of a homicide victim, but the case was reversed on other grounds and the photographic evidence comment was quite limited. *Wooldridge* was not concerned with inflammatory photographs, but with whether they accurately depicted a particular scene. *State v. Whitt*, 129 W. Va. 187, 40 S.E.2d 319 (1946), dealt with photographs which the Court described as "ghastly" but, without discussing underlying legal principles, sanctioned their admission. In *State v. Goins*, 120 W. Va. 605, 199 S.E. 873 (1938), photographs depicting a victim and the room and bed where he was shot were admitted, but the Court did not analyze the problem.

We recognize that photographs of a victim are admissible if they are relevant. *State v. Sette, supra;* Annot., 73 A.L.R.2d 769 (1960).

A qualification to this rule is that they may not be admissible if they are revolting or gruesome because their impact may unduly prejudice or inflame a jury. *State v. Sette, supra; Young v. State,* 234 So.2d 341 (Fla. 1970); *State v. Clark,* 218 Kan. 18, 542 P.2d 291 (1975); *Breshers v. State,* 572 P.2d 561 (Okla. Crim. 1977); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

Photographs that show much gore and blood, or emphasize contorted facial or bodily features, or depict a body after autopsy procedures; and color photographs and enlargements of particular areas of a corpse magnifying its revolting aspects will be more likely condemned as gruesome. This is illustrated in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 697 (1977):

> "The fact that pictures depict the corpse of a victim does not render them inflammatory per se. *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). Rather the depiction must be of such a gruesome nature or be cast in such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant. The position of the body, whether it is nude or wholly or partially covered, whether the facial features are contorted, whether blood is present in profusion and similar factors are to be considered."

Gruesome photographs are not *per se* inadmissible. But the trial court must be satisfied that they are essential to the State's case. *See, e.g., People v. Garlick,* 46 Ill.App.3d 216, 360 N.E.2d 1121 (1977); *State v. Clark, supra; State v. Scott,* 337 So.2d 1087 (La. 1976); *State v. Partee,* 199 Neb. 305, 258 N.W.2d 634 (1977); *State v. Polk,* 164 N.J. Super. 457, 397 A.2d 330 (1977); *Commonwealth v. Ross,* 452 Pa. 500, 307 A.2d 898 (1973); *Commissioner v. Chacko,* 391 A.2d 999 (Pa. 1978). They must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on

a jury against a defendant. The State must show that they are of essential evidentiary value to its case. This point was developed in *Commonwealth v. Chacko*, 391 A.2d 999, 1001 (Pa. 1978):

"Having found the photographs to be inflammatory, we must next determine whether they were of essential evidentiary value to the prosecution's case. *Commonwealth v. Schroth, supra* at ____, 388 A.2d at 1036; *Commonwealth v. Ross*, 452 Pa. 500, 506, 307 A.2d 898, 901 (1973) (photographs essential to rebut claim of self-defense). ... The Commonwealth proceeded upon the theory of felony murder, charging robbery as the underlying felony. At trial, the coroner, who examined the victim's body at the crime scene, testified extensively as to the condition of the victim's body and the nature of the wounds. Following the coroner's testimony, the pathologist who conducted the autopsy testified as to similar matters and stated that death was caused by knife and bullet wounds. Thus, there was an abundance of expert testimony going to prove the element of death due to a criminal agency. *See Commonwealth v. Williams*, 476 Pa. 557, 563-566, 383 A.2d 503, 506-508 (1978). There is no indication that the photographs were necessary to supplement the otherwise specific testimony of the coroner and the pathologist. ...

. . . .

"In the instant case the photographic evidence was at best cumulative but certainly not essential. ..."

Courts have also recognized that it is proper for a trial court to admit an otherwise gruesome photograph after blocking out disgusting parts. In *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976), and *Commonwealth v. Brueckner*, 458 Pa. 39, 326 A.2d 403 (1974), the trial court eliminated the contorted facial features of a victim and allowed the photograph to be introduced, as amended.

There may be instances when excessive blood may be removed from a crime scene before photographs that are intended to be evidence, (as distinguished from investigative photographs), are taken. *Commonwealth v. Brueckner, supra; Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970). It may be that proper masking of photographs by a trial court is better than tampering with a crime scene because of the risk that the cleaning process might result in relocating crime scene objects.

One court suggested that color photographs be redone in black and white to reduce their inflammatory impact. *State v. Polk, supra.*

Here the critical issue was whether the defendant or one of the other persons in the drunk tank killed the victim. There was no dispute that the victim had died as a result of a severe beating, including being kicked and stomped.

The State's pathologist testified that the cause of death was loss of blood through a rupture of the victim's mandibular artery and extensive fracturing of his jaw. There were also multiple lacerations of the deceased's liver resulting in blood loss. He attributed these injuries to blows made by a non-sharp instrument, such as by fist or foot.

Of particular importance to the State's case was a bloody shoe print on the victim's white undershirt. One of the State's witnesses, a State police officer, testified that he had attempted to compare this print with the shoes of the other three individuals in the cell with the victim, and that defendant's shoe "appears to have more likely made the impression than any of the others."

The defendant did not contest either the cause of death or that the victim was beaten or stomped to death. His defense was that he did not commit these acts; that they were a result of a fight between the victim and Braden. Defendant stated that he was drunk

when arrested and was asleep on a bench in the cell when he was kicked and fell off the bench, awakening to see the two men fighting. He attempted to intervene and then tried to attract the attention of jailers.

The State introduced over defendant's objection fourteen 5″ by 7″ colored photographs of the cell and the victim's body. We conclude that a number of these photographs are unduly gruesome and should not have been admitted because they did not prove any essential element of the State's case.

Specifically, Exhibit 1, a close-up view of the victim's battered and lacerated face emphasizing the final contorted death agony with one eye open, cannot be deemed essential. The detailed and uncontradicted testimony of the pathologist described the various facial wounds and lacerations. The same objection applies to Exhibits 8, 11 and 12, which also focus primarily on the facial wounds.

Exhibits 2, 4, 5 and 6 show various aspects of the cell itself and quantities of blood smeared on the floor and walls. The general condition of the cell including the blood spillage, described by the State's investigating offices, was not disputed by defendant and such pictures cannot be deemed of essential evidentiary value to the State's case. Exhibits 3, 7, 9, 10 and 13, further views of the cell but in the area where the deceased was lying, add nothing to the State's case.

Exhibit 14, a close-up picture of the bloody footprint on the victim's undershirt, has essential evidentiary value because it reinforces critical testimony of the witness who testified that the print resembled the bottom of defendant's shoe which was introduced into evidence. Since this was one of the critical facts linking defendant to the crime, the jury should be entitled to see this imprint and the shoe. However, the photograph also contains a close-up view of the contorted facial features of the victim and should be masked before it is shown to a jury.

While rulings about admissibility of photographs must be made when they are offered by the State, such rulings may be changed if a defendant's evidence controverts facts about which the photographs are relevant, making introduction of the photographs in rebuttal, essential to the State's proof.

## II.

After deputies discovered Malone's body they had Braden, who was injured, taken to a hospital and began their investigation by taking pictures. During this time petitioner Rowe was "grumbling incoherently." He was told to "be quiet and sit down" and "he would be able to talk later." But he said, "If I hadn't killed him I would have gone over to Belpre and killed my wife." The statement was admitted at trial over defendant's objection after an *in camera* hearing.

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) applies:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. [Emphasis ours]

It is undisputed that Rowe was not given any *Miranda* warnings. He was clearly in custody.[1] However, he was not being questioned. "Volunteered statements of any kind are not barred by the Fifth Amendment. ..." *Mir-*

---

[1]The fact that the custody related to another cause is irrelevant. *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

*anda,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. The statement was properly admitted.[2]

### III.

The second syllabus in *State v. Charlot,* ____ W. Va. ____, 206 S.E.2d 908 (1974) was:

> When an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence.

Sergeant Richard Yost testified that after examining a heel mark on the victim's shirt and looking at the other three inmates' shoes, he though Rowe's shoes might have made the mark. Asked if he could say which shoe made the impression on the victim's shirt, he said, "No sir, I can't. There is nothing there to positively match one or the other."

Rowe objected to the testimony because the State failed to establish a complete chain of custody with regard to Braden's shoes.

The shoes were removed at a hospital and given to a Lieutenant James George. The State did not show who had possession from the time they were taken from Braden until Lieutenant George received them.

------

[2]This rule is consistent with Syllabus Point 4 of *Wilhelm v. Whyte,* ____ W. Va. ____, 239 S.E.2d 735 (1977):

" 'A spontaneous statement by a defendant made prior to any action by a police officer and before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing.' Syllabus Point 1, *State v. Johnson,* W. Va., 226 S.E.2d 442 (1976)."

Defendant's being in custody made an *in camera* hearing more pivotal and proper.

Under *Charlot's* "complete chain" test the shoes were probably inadmissible. However, we need not depend upon the point nor decide if it was harmless error.[3] Our decision about the photographs requires a new trial, at which the chain of custody deficiencies can be repaired.

The judgment of the trial court is reversed.

*Reversed.*

---

[3]Syllabus Point 2, *State v. Atkins*, (W. Va. No. 14133, July 17, 1979) states:

"Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."

If the error were constitutional it would be necessary for the State to show it harmless beyond a reasonable doubt. *State v. Boyd*, ___ W. Va. ___, 233 S.E.2d 710 (1977).