301 S.E.2d 199

**STATE of West Virginia**

v.

**Anthony AUDIA.**

**No. 15212.**

Supreme Court of Appeals of
West Virginia.

March 11, 1983.

J. Burton Hunter, III, Weston, William C. Thurman, Buckhannon, for appellant.

Chauncey H. Browning, Jr., Atty. Gen. and Silas B. Taylor, Asst. Atty. Gen., for appellee.

McHUGH, Justice:

Anthony Audia appeals his conviction by a jury of armed robbery in the Circuit Court of Lewis County, for which he was sentenced to 25 years in the penitentiary. A careful examination of the record reveals no errors requiring reversal of his conviction. Accordingly, we affirm the judgment of the circuit court.

Audia and his co-indictee, Thurman Franklin Dye, were charged with the armed robbery of Clyde Cowgar, the owner of a general store in Crawford, Lewis County, on April 12, 1979. The two men were tried separately, resulting in convictions in both cases. The evidence in each case was substantially the same, involving many of the same witnesses. As we have recently affirmed Dye's conviction,[1] we refer to that opinion for a more detailed description of the facts.

Briefly, appellant's assignments of error may be grouped into seven categories: (1) improper identification procedures; (2) denial of a fair and impartial trial; (3) denial of an evidentiary hearing on his competency to stand trial; (4) refusal to quash the indictment or direct a verdict for the appellant; (5) denial of expenses for a private investigator; (6) admission of gruesome photographs of the victim; and (7) denial of certain discovery motions.[2]

I

THE IDENTIFICATIONS

At trial, five witnesses placed the appellant in the store at the time of the robbery. Of these witnesses, four had been shown a photographic array, and two had been present at a line-up from which they identified the appellant prior to trial. No testimony about these previous identifications was elicited at trial. However, the appellant contends that the in-court identifications deprived him of due process of law and should not have been permitted, in that they were tainted by an unduly suggestive photo array and an unduly suggestive line-up conducted when the appellant was without benefit of counsel.

We have examined the photographs in the array, and testimony about the procedure used in presenting it, and are of the opinion that the photographic identification procedure was not suggestive. We have also examined photographs of the line-up participants and testimony about procedures used with it, and conclude that the

---

1. *State v. Dye,* 171 W.Va. 361, 298 S.E.2d 898 (1982).

2. The appellant also contends that the trial court should have recused itself, and should have granted his motion to disqualify the prosecuting attorney. He cites us no law and presents no argument in support of these contentions, however, and we deem them to be waived. *See, e.g., State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281, 284 (1982), and cases noted therein.

line-up was not suggestive. In each case, the police were successful in locating individuals who approximated the descriptions given by witnesses, and who were similar in appearance to the appellant. There is no testimony that the witnesses were coached in their choices, and the record indicates that each was certain of his identification of the appellant as one of the perpetrators.

■ With regard to the absence of counsel at the line-up, it appears from the record that adversary judicial criminal proceedings had been instituted against the appellant, so that the subsequent line-up identification constituted a violation of his right to counsel. *See State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982). However, since none of the witnesses testified to his pretrial identification of the appellant at trial, the admission of the in-court identifications of appellant by two witnesses who had viewed the line-up is governed by the standards set forth in syllabus point 3 of *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976), and quoted in syllabus point 2 of *Gravely, supra:*

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ The witnesses who identified appellant at trial after having seen the line-up were Oscar Galford, a customer who was also attacked during the robbery, and Merle Waugh, a woman who lived nearby. Mrs. Waugh had seen the appellant and Dye in the store earlier in the afternoon, and had seen them return to the store just before the robbery occurred.

The record shows that both witnesses had ample opportunity to observe the appellant on the day of the crime, and each had given accurate descriptions of the men to police prior to viewing the line-up. Neither demonstrated any uncertainty about the identification of appellant at the line-up, which was conducted the day after the robbery. Considering all the factors in *Casdorph, supra*, we conclude that the trial court did not err, and did not deprive the appellant of due process of law by admitting the in-court identifications of appellant by Galford and Waugh.

We note that the appellant was also positively identified at trial by the victim and another witness to the crime, who did not view the line-up. In addition, one of appellant's companions on the day of the robbery placed him in the store at the time of the crime and corroborated the testimony of other witnesses about appellant's activities on that day. Two other witnesses placed the appellant in the getaway car earlier in the day. Finally, the appellant admitted on the stand his participation in the robbery, maintaining that he was coerced by Dye into assisting him. Since appellant was not denied due process of law by the admission of these in-court identifications, we find no merit in his contention that they forced him to confess his involvement in the crime.

## II

### THE FAIR TRIAL QUESTION

The appellant claims that the trial court deprived him of his right to a fair and impartial trial by denying his motions for a change of venue based on prejudicial pretrial publicity, and refusing to dismiss a prospective juror for cause.

### A. CHANGE OF VENUE

The appellant's first motion for a change of venue was heard on February 11, 1980, six weeks before trial. Evidence presented at the hearing showed that the robbery had received extensive coverage by the media, which continued through the time of the hearing. Four representatives of various

news media testified that although it would be difficult to find twelve jurors in Lewis County who had never heard of the robbery, they were not aware of any hostile sentiment in the community toward the defendants. Two of them testified that this case may have received more publicity than similar criminal cases because of numerous legal actions brought by the defendants against law enforcement officers. On oral argument, the appellant conceded that the trial court properly denied the motion, finding no showing of a present hostile sentiment in the county which would deprive appellant of a trial before a fair and impartial jury.

On March 20, 1980, Thurman Franklin Dye was convicted of the armed robbery by a Lewis County jury. On March 21, 1980 the appellant's trial began with an extensive and exhaustive individual *voir dire* of the jury panel, from which the members of the Dye jury had been removed. At the conclusion of *voir dire* and after consideration of peremptory strikes, appellant renewed his motion for a change of venue, on the grounds that ten jurors had been struck because of prejudice, every one had heard about Dye's conviction, and all had been exposed to some kind of media coverage about the matter. The court denied the motion as being untimely and entirely without foundation.

■ The appellant contends that prejudice had so infected the jury that permitting the Audia trial to proceed in Lewis County, following so closely the conviction of Dye, was prejudicial error. We disagree. "Widespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial." Syl. pt. 1, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982).

■ The transcript of the *voir dire* shows that although eleven prospective jurors were dismissed for cause, only five of them had formed an opinion as to the ap-

pellant's guilt. In any event, all of those who expressed any prejudice were excused. The court was satisfied that the remaining jurors were fair, just and impartial, and the record supports that conclusion. We hold, therefore, that the trial court did not abuse its discretion by failing to grant a change of venue. The appellant's contention that the court abused its discretion in failing to summon jurors from other counties is likewise without merit.

## B. JUROR CHALLENGE

During the individual *voir dire* of prospective juror Randall L. Hughes, the prosecuting attorney informed the court that he represented Hughes, along with 30 to 40 other members of his family, in a partition suit then pending in the circuit court. The prosecutor had never met Hughes, but had only dealt directly with his sister; apparently Hughes was not even aware that the prosecutor was involved. Defense counsel moved to strike Hughes for cause because he was a client of the prosecutor. The court denied the motion, finding no cause shown for excusing him.

The appellant contends that a juror who is in an attorney-client relationship with the prosecutor at the time of trial could not, as a matter of law, sit impartially in a trial in which his lawyer represents the State.[3] He claims that the court's failure to strike Hughes should constitute reversible error, and cites *State v. Dye*, 167 W.Va. 652, 280 S.E.2d 323 (1981); and *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973).

In *Dye* and *West, supra*, we held that it was reversible error for the court to fail to discharge prospective jurors who were employed by prosecutorial or law enforcement agencies. In *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978), we extended the rule to jurors who were related to, or close friends of, law enforcement officers; and in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), to close friends of the

---

**3.** Appellant also claims that Hughes should have been excused because he admitted he had heard that Dye was convicted of the same offense the day before. This allegation is not supported by the record, and we will not consider it.

prosecutor. *See also State v. Helmick*, 169 W.Va. 94, 286 S.E.2d 245 (1982).

We have not yet considered the situation presented here, where the prospective juror is a client of the prosecuting attorney at the time of trial. Such a relationship is not one of the grounds for disqualification set forth in our statutes, *W.Va.Code*, 52–1–2 [1957] and 56–6–12 [1923],[4] nor is it one of our common law causes of *prima facie* disqualification from jury service. *See State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308, 320 (1966); *State v. Dushman*, 79 W.Va. 747, 91 S.E. 809 (1917).[5] In addition, we find no other jurisdiction which has held such a relationship to be *prima facie* grounds for disqualification of a prospective juror.[6] We find no prejudice, *per se*, in the attorney-client relationship between the prosecutor and Hughes, particularly where, as here, the representation is of a class of people and he has little, if any, contact with the particular individual who is the juror. We therefore hold that where a prospective juror is one of a class of persons represented by the prosecuting attorney at the time of trial, but there has been no actual contact between that juror and the prosecutor, the existence of the attorney-client relationship alone is not *prima facie* grounds for disqualification of that juror.

"The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syl. pt. 1, *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974). Hughes' responses during *voir dire* revealed no bias or prejudice on his part, and showed that he would be able to render a fair and impartial verdict solely on the evidence presented to him. We have already noted the limited contact, if any, between Hughes and the prosecutor before this trial. Perhaps, the more prudent course by the trial court would have been to excuse Hughes. We hold, however, that its failure to do so in this case was not an abuse of discretion and was not reversible error.

## III

### DENIAL OF COMPETENCY HEARING

The appellant next contends that the trial court erred in denying his motion under *W.Va.Code*, 27–6A–1(d) [1977] for an evidentiary hearing on the issue of his competency.

The appellant's chief defense was that he was so intoxicated by drugs or alcohol at the time of the robbery that he was unable

---

**4.** *W.Va.Code*, 52–1–2 [1957] provides, in part:

"The following persons shall be disqualified from serving on juries: Idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes."

In *W.Va.Code*, 56–6–12 [1923], we find:

"Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause...."

**5.** "At the common law the principal causes of challenges, prima facie disqualifying jurors, were: (1) Kinship to either party within the ninth degree; (2) was arbitrator on either

side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included." *Dushman*, 79 W.Va. at 749, 91 S.E. at 810.

**6.** *See, e.g., Harris v. State*, 46 Ala.App. 497, 243 So.2d 770 (Ala.App.1970); *People v. Wilkes*, 44 Cal.2d 679, 284 P.2d 481 (1955); *State v. Wilcoxen*, 200 Iowa 1250, 206 N.W. 260 (1925); *State v. Ekis*, 2 Kan.App.2d 658, 586 P.2d 288 (Kan.App. 1978); *State v. Grant*, 394 S.W.2d 285 (Mo. 1965); *State v. Radi*, 176 Mont. 451, 578 P.2d 1169 (Mont.1978); *State v. Glover*, 21 S.D. 465, 113 N.W. 625 (1907); *State v. Lewis*, 31 Wash. 75, 71 P. 778 (1903); *see also* Annot., 72 A.L.R.2d 673 (1960); *but cf. Klinck v. State*, 203 Ind. 647, 179 N.E. 549 (1932) [indicating challenge might have been sustained if attorney-client relationship had existed at time of trial.]

to form the specific intent to commit the crime, and was so diminished in his physical and mental capacity that he was more susceptible to coercion by his co-indictee, Thurman Dye.

On November 12, 1979, appellant filed a motion seeking treatment and observation to determine whether he was competent to stand trial, and whether he could be held criminally responsible for the crime charged. The court overruled the motion in part, and by order of December 18, 1979, ordered mental and physical examinations of the appellant to determine his mental competency at present, and at the time of the offense.

Appellant, pursuant to his motion, was examined by two physicians, who recommended more complete psychiatric and psychological evaluations. On February 4, 1980, written reports were filed from Gary Van Nostrand, a licensed psychologist, and Dr. Jaime Lazaro, a psychiatrist. Van Nostrand found that appellant was currently legally competent, and was competent at the time of the alleged offense; however, he had no objective data on which to base an opinion regarding appellant's ability to form a specific intent to commit the crime. Dr. Lazaro found no psychotic symptoms, and concluded that appellant "is mentally competent and knows right from wrong."

On February 11, 1980 the court considered these reports and found that appellant was competent at the time of the offense, and was mentally competent to stand trial. Appellant was also examined by Dr. Robert O'Donnell, pursuant to the court's previous order. His psychiatric report concluded that appellant was mentally competent at the time of the offense, and competent to stand trial. The court filed his report on March 11, 1980, and reaffirmed its previous findings.

On the morning of March 21, 1980, both sides announced that they were ready for trial, and the witnesses were sworn. Prior to the impaneling of a jury, appellant presented his motion for an evidentiary hearing in accordance with *W. Va. Code*, 27–6A–1(d) [1977]. The court denied the motion, stating that it had never found the slightest indication that appellant was in any way incompetent. The court also believed the motion was not timely, and was made purely for purposes of delaying the trial.

*W. Va. Code*, 27–6A–1(a) [1977] provides, in relevant part:

"(a) Whenever a court of record believes that a defendant in a felony case ... may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings ... order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist."

Although the trial judge granted appellant's motions for examinations, he clearly indicated that at no time did he believe appellant was incompetent. He said he ordered the examinations in an effort "to fully satisfy the Defendant as to his Constitutional rights." The appellant maintains, however, that the court was required to grant his motion for a hearing under *W. Va. Code*, 27–6A–1(d) [1977], which provides, in part:

"[W]ithin five days after the report on said issue following an examination under subsection (a) of this section, the court of record shall make a finding on the issue of whether the defendant is competent for trial .... If the court of record orders or if the defendant or his counsel on his behalf within a reasonable time requests a hearing on such findings, a hearing in accordance with section two [§ 27–6A–2] of this article shall be held by the court of record within ten days of the date such finding or such request has been made."

The appellant also relies upon our holding in syllabus point 2 of *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976):

"Under the provisions of W.Va.Code, 27–6A–1, *as amended*, when a trial court has reason to believe that a defendant in a criminal case may be incompetent to stand trial and orders a mental examination of the defendant, the defendant is entitled as a matter of right to a full

evidentiary hearing on the question of his competency."

Under *W.Va.Code*, 27–6A–1(a) [1977], a trial court, in the exercise of its discretion, has no obligation to order mental examinations where there is no initial showing that a defendant is incompetent. *See State v. Myers*, 167 W.Va. 663, 280 S.E.2d 299 (1981); *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980). In the instant case, the court did so merely as a precaution. We find no evidence in the reports which would indicate that the appellant was not competent to stand trial. On the contrary, the psychiatric findings showed that he was very aware of his legal rights, and was able to offer much assistance in the preparation of his defense.

The facts of this case are very different from those of *Milam, supra*. In *Milam*, psychiatric examinations ordered by the court resulted in conflicting opinions as to whether the defendant was competent to stand trial; further, there was evidence that he had been previously committed for treatment at a psychiatric facility. We held that a hearing should have been granted, since the evidence raised a substantial question concerning the defendant's competency to stand trial. In the case now before us, the evidence raised no question as to appellant's competency to stand trial, and it would have been pointless to have held a hearing.

■ In syllabus point 2 of *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981), we held:

"Even though a trial judge does not make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist and a psychologist, the defendant may request a hearing on that issue under *W.Va.Code*, 27–6A–1(d) [1977], at any reasonable time *prior to trial*." [emphasis supplied].

Although reports from a psychiatrist and a psychologist were filed in February, the appellant argues that he was entitled to wait for the final psychiatric report before filing his motion for an evidentiary hearing. This final report, and the judge's reaffirma-tion of his previous ruling, were filed March 11, 10 days before trial. There was some controversy over whether the State was aware of appellant's desire for a hearing prior to trial; however, it is undisputed that no motion for a competency hearing was filed until the morning of trial. We therefore hold that the trial court was correct in ruling that the motion was not timely.

■ In addition, it appears that the appellant's main purpose in requesting a hearing was to obtain evidence of his mental condition at the time of the offense. *W.Va.Code*, 27–6A–1 [1977] does not require a pre-trial hearing on the issue of criminal responsibility. *See State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981).

The reports stated that appellant gave a history of heavy drug and alcohol abuse through the day of the robbery, and denied any memory of the crime. However, Dr. O'Donnell concluded that appellant was not addicted at the time of the offense, and his claim of amnesia was viewed as suspect by Van Nostrand and O'Donnell, in light of his detailed descriptions of events both prior to and following the robbery. None of the reports indicated that appellant was not responsible for his acts.

Finally, the appellant introduced no psychiatric evidence of incompetency at trial. We can understand why no such evidence was introduced. The reports would have been counterproductive to the defense in the trial. Under these circumstances, we find no error in the trial court's refusal to conduct an evidentiary hearing.

IV

THE AIDER AND ABETTOR QUESTION

■ The appellant contends that the trial court should have quashed the indictment or directed a verdict in his favor, in that the evidence showed him to have been an aider and abettor who could not be convicted upon an indictment charging him solely as a principal in the first degree.

*State v. Bennett,* 157 W.Va. 702, 203 S.E.2d 699 (1974).[7] Although he was charged, tried and convicted as a principal in the first degree, appellant contends that the evidence showed Thurman Franklin Dye was the primary actor, and that appellant was an unwilling participant who was coerced into assisting Dye.

The trial testimony showed that Audia drove Dye to Cowgar's store, went inside the store with him, tripped Mr. Cowgar while Dye was holding him, and tied him up. Aside from the appellant's testimony, there was no evidence that Dye forced the appellant to assist him in any way. Although the evidence did show that Dye initiated the robbery, struck the victims, and took the money, when viewed in the light most favorable to the State, it also established that appellant was an active and willing participant in the crime. His actions went further than those of a mere companion[8] or lookout,[9] but were those of a principal actor in the robbery.

We conclude that the State did present evidence which would sustain a conviction under the indictment. *See, e.g., State v. Crockett,* 164 W.Va. 435, 265 S.E.2d 268 (1979). Therefore, the trial court did not err in refusing to quash the indictment or direct a verdict of acquittal on the charge of principal in the first degree to armed robbery.

## V

### EXPENSES FOR PRIVATE INVESTIGATOR

On November 12, 1979, appellant filed a "Motion to Produce" an itemization by date, hour and individual, of all time expended by agents and employees of the State in the investigation of this case, asserting that it was necessary to determine the likely cost of retaining an independent investigator to aid in the preparation of his defense. Appellant also filed a "Motion for Advance Expenses" seeking advance authorization to incur expenses for an investigator, in a sum which would permit an investigation comparable to that conducted by the State, or in the alternative $5,000.[10] On December 4, 1979, both motions were denied by the court. The appellant contends that the denial of these motions severely hindered him in the presentation of his defense, and violated his rights to due process.

In support of these contentions, appellant cites *W.Va.Code,* 51–11–8 [1977][11] and *State ex rel. Foster v. Luff,* 164 W.Va. 413, 264 S.E.2d 477 (1980), decided four months after the trial court's ruling. In syllabus point 1 of *Foster, supra,* we held:

> "Upon request for additional expert fees under *W.Va.Code,* 51–11–8: (1) the request should be made in writing; (2) the request should detail why the expert is needed; (3) defense counsel should be permitted an opportunity to elaborate on the motion; and (4) in denying the motion, the trial judge should place in the record the specific reasons for his ruling."

We recognized in *Foster* that "where good cause has been shown for retaining the services of an expert, but the trial court has arbitrarily refused, reversible error may result." 164 W.Va. at 419, ——, 264

---

7. Appellant was tried before our decision in *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980), in which we held that it would no longer be necessary to indict an aider and abettor as such.

8. *See, e.g., State v. Wayne,* 169 W.Va. 785, 289 S.E.2d 480 (1982); *State v. R.A.W.,* 165 W.Va. 264, 267 S.E.2d 553 (1980).

9. *See, e.g., State v. Bennett,* 157 W.Va. 702, 203 S.E.2d 699 (1974).

10. This request was lowered to $2,500 at the hearing on the motions.

11. *W.Va.Code,* 51–11–8 [1977] was repealed by Acts 1981, c. 183, effective July 1, 1981. The section, in effect at the time of the appellant's trial, provided, in part:

> "Expenses of the attorney in rendering such services, including, but not limited to, necessary expenses for travel, transcripts, investigative services and expert witnesses, shall be reimbursed to a maximum of five hundred dollars, unless the attorney, for good cause shown to the court, shall have received advance approval to incur expenses for a larger sum."

The above section may now be found, in substantially the same form, in *W.Va.Code,* 29–21–14(e)(3) [1981].

S.E.2d at 481. Although *Foster* dealt with additional expert witness fees, its analysis is applicable to fees for investigative services, which are covered by the same statute.

The appellant claims that the trial court's denial of his "Motion to Produce" prevented him from fully justifying his request for investigative expenses. Further, he contends that the court did not permit him to develop evidence demonstrating his need for advance expenses in excess of the statutory maximum. We disagree.

The record shows that defense counsel had made no attempt to ascertain the possible costs of hiring an investigator prior to the hearing on the motions, but planned to consult one as soon as he learned how many hours the State had spent on its investigation. Defense counsel presented argument in support of his motion, but did not request an evidentiary hearing. In the absence of some estimate of contemplated costs, it would have been impossible for the court to determine if appellant's expenses would have exceeded $500.

In syllabus point 6 of *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1982), we said:

"It is a matter within the sound discretion of the trial judge whether investigative services are necessary under W.Va. Code, 51–11–8, and the exercise of such discretion will not constitute reversible error unless the trial judge abuses such discretion."

While it is true that the judge did not place his specific reasons for denial on the record, we are of the opinion that good cause for appellant's request was not shown, and the court's refusal to approve additional expenses was not an abuse of discretion.

## VI

## PHOTOGRAPH OF THE VICTIM

The appellant next complains that he was prejudiced by the trial court's ad-mission into evidence of a photograph of the victim, Clyde Cowgar. He contends that the State failed to show that the photograph was of essential evidentiary value to its case, citing *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979). His reliance upon *Rowe* is misplaced. "In order for photographs to come within our gruesome photograph rule established in *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome." Syl. pt. 6, *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982).

The photograph in the instant case is a small black-and-white snapshot of an elderly man with an apparently minor laceration on his right forehead. The trial court initially concluded that it was not gruesome, and we agree. We find no abuse of discretion in its admission.

## VII

## DISCOVERY

Finally, the appellant assigns as error the denial of his pretrial requests for police reports and statements made by certain witnesses to investigative officers. He points to the limited resources of appointed counsel, and asserts that this discovery was necessary to uncover potential exculpatory evidence, not developed by the State. Aside from a bare allegation of prejudice, none is shown.

Police reports are not generally discoverable,[12] unless they are used at trial to refresh recollection, at which time they must be disclosed to the defense for use in cross-examination. *See, e.g., State v. Moran*, 168 W.Va. 688, 285 S.E.2d 450 (1981). Similarly, a defendant is only entitled to examine prior statements of prosecution witnesses who testify against him, for the purpose of cross-examination. *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).[13] The appellant does not contend

---

12. Rule 16(a)(2), W.Va.Rules of Criminal Procedure [1981], which went into effect after the appellant's trial, protects police reports from disclosure during discovery.

13. Criminal Rule 16(a)(2) also protects statements of State witnesses from disclosure until they testify, at which time Rule 26.2 governs their production for use during cross-examination.

that reports or statements used at trial were not made available for cross-examination.

"Subject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court." Syl. pt. 1, *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), *in part*. The record shows that the court granted appellant's motion for disclosure of all exculpatory information, to which he was properly entitled. Further, the court ordered the State to provide appellant with a list of witnesses along with a brief synopsis of their testimony. Since no exception is applicable here, any further discovery was within the sound discretion of the trial court, and we find no abuse of that discretion.

For the reasons set forth above the judgment of the Circuit Court of Lewis County is affirmed.

Affirmed.