568 S.E.2d 45

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Bethel HATCHER, Defendant Below, Appellant.**

No. 30030.

Supreme Court of Appeals of West Virginia.

Submitted April 3, 2002.

Decided June 27, 2002.

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Senior Assistant Attorney General, Charleston, West Virginia, for appellee.

Jeffry A. Pritt, Union, West Virginia, Patrick I. Via, Law Office of Jesse O. Guills, Jr., Lewisburg, West Virginia, for appellant.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

PER CURIAM.

We reverse this case based on the appellant being denied a fair trial because of a juror's failure to respond fully and honestly to questions propounded on *voir dire,* and the trial court's failure to provide a proper curative instruction following a misstatement of the law by the prosecuting attorney in the closing argument.

## I.

The appellant Bethel Hatcher was convicted of first degree murder on February 2, 2000, in the Circuit Court of Summers County. The jury recommended mercy. Specifically, the appellant was convicted of murdering Phyllis Rogers, with whom he had lived and who disappeared in late 1992. Her remains were discovered in 1994; the appellant

was arrested and charged with her murder in 1998.[1]

The evidence against the appellant was a mixture of circumstantial and forensic evidence and alleged inculpatory statements to third parties by the appellant. Taken together, the evidence was certainly sufficient to support a conviction; but the evidence was also strongly controverted at trial. One of the third parties to whom the defendant allegedly made inculpatory statements was a person who was in jail with the appellant; another was a former girlfriend who admitted to drug use. The forensic evidence against the appellant was challenged by the defense, in part on the grounds that early investigation of the victim's disappearance did not discover the evidence.

In short, the defendant's challenge to the prosecution's case was substantial, and the jury could have found that the evidentiary challenge raised a reasonable doubt as to the defendant's guilt. It is in this context that we discuss two of the appellant's assignments of error.

## II.

■ The basis for the first assignment is the fact that one of the jurors who convicted the appellant did not disclose in *voir dire* that the juror's mother had been murdered in a domestic violence situation, and further did not disclose that one of the State's witnesses against the appellant was the same police officer who had investigated the juror's mother's murder. The appellant learned of these circumstances after his conviction and raised them in a motion for a new trial, which the court denied.

This juror was asked during *voir dire,* along with the other members of the prospective jury panel, if he "ever had a friend or family member who has been a victim of a crime of violence?" Although three other potential jurors disclosed that relatives had been the victims of domestic violence or mur-

der, the juror in question said nothing. This juror later also disclosed that he knew the police officer in question who was listed as a possible State witness, but when asked how, the juror simply said that the police officer was a life-long neighbor and acquaintance. The juror made no mention of the police officer's role in investigating the juror's mother's death.

It may be conceivable that the juror in question did not understand the direct question about family members being the victims of violence, even after other jurors spoke up with answers. It may also be conceivable that the juror simply forgot to mention the police officer's role in investigating his mother's murder. But the weight of the evidence in the record strongly suggests that the juror failed to honestly disclose circumstances that might cause the juror to be disqualified; or at the least that would give rise to further inquiry by defense counsel, and perhaps a peremptory strike from the jury panel.

■ In Syllabus Point 2 of *State v. Dean,* 134 W.Va. 257, 58 S.E.2d 860 (1950), this Court stated:

"A motion to set aside a verdict and grant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned it, must be supported by proof that the juror was disqualified, that movant was diligent in his efforts to ascertain the disqualification and that prejudice or injustice resulted from the fact that said juror participated in finding and returning the verdict. Such facts must be established by proof submitted to the court in support of the motion, and not from evidence adduced before the jury upon the trial." Syl., *Watkins v. Baltimore and Ohio Railroad Company et al.,* 130 W.Va. 268 [43 S.E.2d 219] (1947).

Based on this syllabus point,[2] we conclude that in the instant case the presence on the

---

1. The appellant has raised pre-indictment delay as error; we find this assignment to be without merit.

2. In the instant case, the juror's association with the investigating police officer in connection with a similar crime of violence against the juror's

family member was a condition that would ordinarily be disqualifying. The appellant's counsel was diligent in seeking to ascertain facts that would support the disqualification, and we feel that prejudice could be concluded from the presence of a juror with such a background. This

jury of a juror who for whatever reason failed to disclose highly important and potentially disqualifying information despite a direct inquiry about that information denied the defendant a fair trial.

■ The appellant also assigns as error certain remarks of the prosecutor in the prosecutor's closing argument. The prosecutor argued to the jury in closing that "premeditation can be formed in an instant," going so far as to put this phrase on a slide that was projected on a screen to the jury during closing argument. Defense counsel promptly objected to this argument. The circuit court told the jury that the prosecutor was merely stating what the prosecutor thought the law was, and the jury was not bound by that statement, but by the law as the judge had charged the jury. The judge pointed out that the jury would have a copy of the charge in the jury room. The judge did not instruct the jury as to what the correct law was.

■ The prosecutor then resumed his argument, and told the jury that the court's written instructions did in fact say that premeditation could be formed in an instant. This statement was erroneous. The court's instructions, in fact, the parties agree, tracked this Court's decision in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), where we held in Syllabus Points 5 and 6:

5. Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

6. In criminal cases where the State seeks a conviction of first degree murder based on premeditation and deliberation, a trial court should instruct the jury that murder in the first degree consists of an intentional, deliberate, and premeditated

killing which means that the killing is done after a period of time for prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as the minds and temperaments of people differ and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intent, which is of sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for first degree murder. To the extent that *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70, (1982), is inconsistent with our holding today, it is expressly overruled.

■ We went on in *Guthrie* to say that:

This means there must be an opportunity for some reflection on the intention to kill after it is formed. The accused must kill purposely after contemplating the intent to kill. Although an elaborate plan or scheme to take life is not required, our *Schrader's* notion of *instantaneous* premeditation and momentary deliberation is not satisfactory for proof of first degree murder.... To speak of premeditation and deliberation which are *instantaneous*, or which take no appreciable time, is a contradiction in terms. It deprives the statutory requirement of all meaning and destroys the statutory distinction between first and second degree murder.

194 W.Va. at 657, 461 S.E.2d at 181 (emphasis added).

While it is possible that the circuit court "could have cured the error if the Judge had responded to counsel's objection with a strongly-worded corrective statement," *State v. Starr*, 158 W.Va. 905, 911, 216 S.E.2d 242, 246 (1975), that did not occur in this case. Rather, the court left it to the jury to decide whether the prosecutor had correctly stated the law, based on the written charge that the jury took to the jury room.

could especially be true with a juror who had not been questioned about the effects of their background on their ability to decide the case fairly,

and who had not revealed the disqualifying information. This met the *State v. Dean* test.

We have never held that the fact that the law is. correctly stated in a written charge that the jury takes to the jury room will cure a serious and repeated misstatement of the law by a prosecutor in closing argument. In the instant case, the element of premeditation was not indisputably shown by the State's evidence. The jury could well have relied on the prosecutor's repeated erroneous statements of the law (and the projected message on a screen) in deciding the issue of premeditation. It is likely, therefore, that the defendant was prejudiced by the prosecutor's misstatement of the law. The defendant's counsel properly preserved this error by means of contemporaneous objection and a later motion for a new trial. This assigned error, therefore, in addition to the fact of the juror who did not disclose material and potentially disqualifying evidence in response to direct inquiries, requires the reversal of the appellant's conviction.

The appellant's other assignments of error are either also without merit or moot in light of our ruling herein.

### III.

The appellant's conviction is reversed and this case is remanded to the Circuit Court of Summers County.

Reversed and Remanded.

MAYNARD, Justice, dissenting.

I believe the circuit court did not commit reversible error during the appellant's first-degree murder trial. Therefore, I respectfully dissent.

Preliminarily, I note that I am troubled by the majority's statement that they considered the appellant's assignments of error in the context of the appellant's "substantial" challenge to the prosecution's case. By this the majority refers to the witness who was in jail with the appellant to whom the appellant made inculpatory remarks; the witness who was a former girlfriend of the appellant and

admitted to drug use; and the evidence against the appellant was discovered sometime after the "early investigation." I believe one could interpret the majority's remarks to mean that if the appellant had not "substantially challenged" the prosecution's case, the Court might have reached a different result. Undoubtedly, this Court has invaded the province of the jury and disregarded its own ruling which states that " '[c]redibility determinations are for a jury and not an appellant court.' Syllabus Point 3, in part, State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syllabus Point 2, in part, State v. Vetromile, 211 W.Va. 223, 564 S.E.2d 433.[1]

The appellant complains that a potential juror failed to "honestly disclose" that his mother had been murdered in a domestic violence dispute eighteen years earlier when the prospective jury panel was asked during voir dire, "Have any of you ever had a friend or family member who has been a victim of a crime of violence?" The majority summarily concludes without much discussion that in this case the failure to disclose constitutes reversible error. I disagree. The majority utterly failed to apply the two-part test enunciated by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984), which states

that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

The question propounded to the juror is overbroad. The Fourth Circuit's analysis in *United States v. Jones*, 608 F.2d 1004, 1007 (4th Cir.1979), is apropos:

It is well established that a trial court may exercise broad discretion in conduct-

---

1. This Court has also consistently held that " ' "[w]ith regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury." Syllabus Point 4, in part, State v. Burton, 163 W.Va. 40, 254 S.E.2d 129 (1979).' Syllabus point 5, State v. Harris, 169 W.Va. 150, 286 S.E.2d 251 (1982)." Syllabus Point 7, State v. Leep, No. 30018, 2002 WL 1358754, June 19, 2002.

ing the voir dire of the jury, and particularly in phrasing the questions to be asked. The fact that a juror or his relative has been the victim of some crime, unrelated to the offense being tried, is, we think, only minimally relevant to the question of that juror's impartiality. Indeed, if the mere fact that a juror or his relative had been the victim of some crime unrelated to that being tried constituted grounds for discharge, it would become difficult, if not impossible, to assemble a jury panel. In the instant case, defendant does not suggest that any particular juror was actually subject to an influence adversely affecting his impartiality. As a consequence, it was not an abuse of discretion to refuse to ask the prospective jurors whether they or any of their relatives had been the victims of any crime.

The facts in *Fitzgerald v. Greene*, 150 F.3d 357 (4th Cir.1998), are similar to the facts in the case *sub judice*. Fitzgerald was on trial for robbery, murder, abduction, and rape. His conviction was affirmed on appeal. He then filed a petition for writ of habeas corpus in the Fourth Circuit contending that James Bradshaw's presence on the jury deprived him of a fair and impartial jury, in part, because Bradshaw failed to disclose during voir dire that his granddaughter had been molested when asked if he or any member of his family had been the victim of a rape, robbery, or abduction. Bradshaw answered no and agreed that he could render a fair verdict. Later, during jury deliberations, Bradshaw disclosed that he had no sympathy for rapists because his granddaughter had been molested. After the verdict was announced, the jury foreman reposed reported the incident to the court. After completing a post-trial hearing during which the trial court was satisfied that Fitzgerald suffered no prejudice from Bradshaw's presence on the jury, Fitzgerald's motion for a mistrial was denied. The Fourth Circuit denied Fitzgerald's petition. In the case at bar, the prospective juror simply remained silent when asked if any member of his family had been the victim of a crime. He was not asked if any member of his family had been murdered.

Pursuant to Syllabus Point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), in West Virginia " '[t]he true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court. (Citation omitted.)' Syllabus Point 4, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983)." Even if the juror in question had disclosed that his mother had been murdered, he could not have been removed for cause absent a showing of bias or prejudice. The trial court was satisfied that none of the jurors who were selected to serve on the panel in the appellant's case were biased or prejudiced. I would defer to the sound discretion of the trial court.

Furthermore, I believe the jury was properly instructed regarding the meaning of "premeditation." The appellant admits that "[t]he jury in this case was instructed consistently with the requirements of *Guthrie*." He, nonetheless, complains because the prosecutor stated during closing arguments that premeditation could be formed in an instant. Upon objection, the judge immediately informed the jury to disregard the prosecutor's comments and to rely on the legal definitions supplied by the court in the jury instructions. In this instance, the trial court responded in an entirely proper manner.

Because I do not believe there was an abuse of discretion, I respectfully dissent to the majority opinion.